# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# GREENVILLE DIVISION

| | |
|---|---|
| Tammie Lane Mullinax, ) | |
| ) | Civil Action No. 6:18-cv-690-TMC |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Andrew M. Saul, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

Plaintiff, Tammie Lane Mullinax ("Mullinax"), brought this action pursuant to the Social Security Act ("SSA"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner")[1], denying her claim for disability insurance benefits ("DIB"). (ECF No. 1). In accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2)(a), D.S.C., this matter was referred to a magistrate judge for pretrial handling. Before this court is the magistrate judge's Report and Recommendation ("Report"), recommending that the court affirm the Commissioner's decision. (ECF No. 25).[2] Mullinax has filed objections to the Report (ECF No. 27), and the Commissioner has responded to those objections (ECF No. 29). Accordingly, this matter is now ripe for review.

---

[1] On June 17, 2019, Andrew M. Saul became the Commissioner of Social Security. Pursuant to Fed. R. Civ. P. 25(d), he is automatically substituted for Defendant Nancy A. Berryhill, who was the Acting Commissioner of Social Security when this action was filed.

[2] A magistrate judge's recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The court is charged with making a de novo determination of those portions of the Report to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

On January 3, 2014, Mullinax applied for DIB, alleging that she has been unable to work since July 1, 2013. (ECF No. 10-2 at 12). Her claim was denied initially on August 12, 2014, and upon reconsideration on December 10, 2014. *Id*. On December 2, 2016, an Administrative Law Judge ("ALJ") conducted a hearing and received testimony from Mullinax and Carroll Crawford, a vocational expert. *Id*. On February 1, 2017, the ALJ denied Mullinax's claim for benefits. *Id*. at 27. The Appeals Council subsequently denied Mullinax's request for review, making the ALJ's decision the final decision of the Commissioner. *Id*. at 2.

In his decision, the ALJ found that Mullinax suffered from the following severe impairments: arthralgias; lumbar degenerative disc disease (DDD); status post breast cancer, mastectomies and chemo-radiation; obesity; affective disorder; and anxiety disorder. (ECF No. 10-2 at 14). The ALJ concluded that Mullinax did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* at 15.

The ALJ then assessed Mullinax's residual functional capacity ("RFC") and concluded she could perform "light work as defined by as defined in 20 C.F.R. § 404.1567(b), over the course of an 8-hour workday, in 2-hour increments with normal and acceptable work breaks." (ECF No. 10-2 at 18). The ALJ further noted Mullinax "can never climb ladders ropes and scaffolds" but "can occasionally climb ramps and stairs, crouch and crawl . . . [and] occasionally stoop to lift within the exertional level from the floor to the waist." *Id.*[3] The ALJ also found that Mullinax can, despite her impairments, "frequently stoop to lift within the exertional level from waist height and above," "frequently balance and kneel," and frequently perform bilateral overhead reaching within

---

[3] Under the applicable regulation, "light work" is defined as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

the exertional level. *Id*. Finally, the ALJ stated that Mullinax "has sufficient concentration, persistence and pace to understand, remember and carry out simple, routine tasks, in a low stress work environment," provided such tasks involve no more than "simple work-related decisions [and] occasional independent judgment skills." *Id*.

Because of these limitations, the ALJ found that Mullinax is unable to perform her past relevant work as an administrative assistant and laboratory assistant. *Id*. at 25. Ultimately, the ALJ concluded that, based on Mullinax's age, education, work experience and RFC, there are light, unskilled jobs "that exist in significant numbers in the national economy that the claimant can perform," such as garment folder, DOT No. 789.687-066. *Id.* at 25-26.[4] Thus, the ALJ ruled that Mullinax was not disabled within the meaning of the SSA between July 1, 2013, and February 1, 2017, the date of the ALJ's decision. *Id.* at 26.

On January 29, 2018, Mullinax filed this action seeking judicial review of the Commissioner's decision. (ECF No. 1). On April 24, 2019, the magistrate judge issued the Report recommending that the court affirm the Commissioner's decision. (ECF No. 25). Mullinax filed objections to the Report, arguing: (1) the magistrate judge erroneously concluded that the ALJ properly evaluated the opinion of Dr. Robirds, her treating physician and (2) the magistrate judge erroneously concluded that the ALJ properly considered Mullinax's subjective complaints

---

[4] The ALJ also identified garment sorter, DOT No. 222.687-014, and stock checker, DOT No. 299.667-014, as jobs available to Mullinax in view of her RFC and other relevant considerations. (ECF No. 10-2 at 26). The magistrate judge concluded, however, that there was an apparent conflict between the GED Reasoning Development Level required for these two jobs as set forth in the Dictionary of Occupational Titles ("DOT") "and the vocational expert's testimony that a hypothetical individual could perform the identified jobs with the mental limitations set forth in the RFC assessment." (ECF No. 25 at 28). To the extent that the ALJ erred at Step Five in identifying garment sorter and stock checker as jobs available to someone with Mullinax's RFC, the magistrate judge determined it was harmless error as there was no conflict between the GED Reasoning Development Level required for the occupation of garment folder and the limitations of Mullinax's RFC. *Id*. 27-28. Mullinax does not object to this conclusion. (ECF No. 27).

3

regarding her symptoms and impairments. (ECF No. 27). In response, the Commissioner contended that Mullinax's objections merely raised arguments already considered and rejected by the magistrate judge. (ECF No. 29).

## II. Standard of Review

The federal judiciary has a limited role in the administrative scheme established by the SSA. Section 405(g) of the Act provides, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined . . . as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes a de novo review of the factual circumstances that substitutes the court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971). Thus, in its review, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).

However, "[f]rom this it does not follow . . . that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative agency." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Rather, "the courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

## III. Discussion

### A. Evaluation of Dr. Robirds' Opinion

Mullinax objects to the magistrate judge's conclusion that the ALJ properly evaluated the opinion of Dr. Robirds, her treating physician. (ECF No. 27 at 1-4). Dr. Robirds signed a medical

4

source statement (MSS) form dated November 15, 2016, reflecting the opinion that Mullinax could only occasionally lift and carry less than ten (10) pounds, and lift and carry on a frequent basis less than ten (10) pounds. (ECF No. 10-30 at 32). Dr. Robirds was also of the opinion that Mullinax could stand/walk (with normal breaks) less than two (2) hours during an 8-hour day (in ten (10) minute increments); and sit (with normal breaks) about two (2) hours in an 8-hour day (in thirty (30) minute increments). *Id*. at 52-53. Dr. Robirds further indicated that Mullinax would have to get up and walk around every ten (10) minutes and that she would need to lie down at unpredictable intervals during the work shift. *Id*. at 53. In support of his opinion regarding these limitations, Dr. Robirds stated that Mullinax "has lumbar disc and cervical disc disease." *Id.* Dr. Robirds checked boxes indicating that these impairments "affect" reaching, handling, fingering, feeling/pushing/pulling; that her pain medications could cause balance problems, making it hazardous to work around machines; that after chemotherapy, her speech and memory were poor and would affect job performance; that her fibromyalgia and lumbar and cervical disc disease would "impact" job performance; and that she would be out of work more than three (3) times a month." *Id*. at 53-54.

> The ALJ gave only "some weight" to this opinion of Dr. Robirds, explaining that:
>
> [G]reater weight cannot be given as the opinion appears to be based more on the claimant's self-related complaints and not on his own assessment or examination findings. On June 16, 2016, Dr. Robirds reported that he completed a disability assessment form "with the help of the claimant and her husband" [ECF. Nos. 10-31 at 83]. The opinion is written on a checkbox form that does not entirely comport to SSA definitions and regulations regarding disability. The opinion appears to be extreme, when compared with the medical evidence, [as previously summarized], where the majority of the author's examination findings are within normal limits [ECF Nos. 10-8 at 67-103; 10-9 at 38-76; 10-31 at 2-92]. Dr. Robirds appears to formulate diagnoses based on the claimant's complaints and not based on diagnostic evidence (see e.g. cervical DDD, "carpal tunnel syndrome; fibromyalgia." [ECF No. 10-31 at 34].

5

(ECF 10-2 at 24).[5]

Mullinax's specific grounds for objecting to the Report as to the ALJ's evaluation of Dr. Robirds' opinion were previously presented to the magistrate judge: that Dr. Robirds' opinion is supported by objective evidence and should have been given greater weight, (ECF Nos. 20 at 22-25; 27 at 1-4); that there is no indication Dr. Robirds based his opinion largely on Mullinax's subjective complaints, *id*.; and that the ALJ improperly cherry-picked evidence to support his conclusion. (ECF Nos. 20 at 25; 27 at 3). The magistrate judge considered these arguments at length and rejected them in a thorough analysis. (ECF No. 25 at 17-21). "The purpose of magistrate review is to conserve judicial resources." *Nichols v. Colvin*, 100 F. Supp. 3d 487, 497 (E.D. Va. 2015). Any objection to a Report and Recommendation must be "specific and particularized in order to facilitate review by a district court." *Hicks v. Comm'r of Soc. Sec. Admin.*, No. 5:17-cv-02446-JMC, 2019 WL 1416879, at *4 (D.S.C. Mar. 29, 2019) (internal quotation marks omitted). "An 'objection' that . . . simply summarizes what has been presented before, is not an 'objection' as that term is used in this context," *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004), and does not require the court to conduct a de novo review, *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). Therefore, to the extent that Mullinax is merely repeating the arguments offered to the magistrate judge, the court rejects them.

Furthermore, having closely reviewed the administrative record and the arguments submitted by the parties in this case, the court agrees with the conclusion of the magistrate judge that the ALJ properly evaluated Dr. Robirds' opinion. Although "[a] treating physician's opinion

---

[5] As the magistrate judge explained, the ALJ cited to the June 16, 2016, examination note because Dr. Robirds' November 15, 2016, opinion, (ECF No. 10-30 at 52-54), "was based on identical information as was contained in the June 2016 form that Dr. Robirds completed with the plaintiff and her husband," (ECF No. 25 at 19). Mullinax does not object to this particular finding.

on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record," it "should be accorded significantly less weight" if it "is not supported by clinical evidence or if it is inconsistent with other substantial evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).[6] As noted by the magistrate judge, the ALJ, in explaining his reasons for according only "some weight" to Dr. Robirds' opinion, found it was "extreme, when compared with the medical evidence, noted above, where the majority of the author's examination findings are within normal limits." (ECF No. 25 at 20). In contrast to Dr. Robirds' opinion that Mullinax can lift and carry less than ten pounds and stand, walk and sit for less than two hours each during an eight-hour workday in addition to other limitations, the ALJ found that "the majority of [Dr. Robird's] examination findings are within normal limits." (ECF No. 10-2 at 24). As stated in the Report, "Dr. Robirds' examinations during the relevant period consistently documented that the plaintiff had a normal appearance, normal reflexes, normal sensation, normal gait and station, normal stability, normal muscle strength, and intact coordination." (ECF No. 25 at 20). Additionally, the ALJ found Dr. Robirds' opinion was also entitled to less weight because it was a "checkbox form" calling for minimal narrative explanation, (ECF Nos. 10-2 at 24, 25 at 19), which is also a proper basis for not giving the opinion of a treating physician controlling weight. *See Schaller v. Colvin*, No. 5:13-cv-334-D, 2014 WL 4537184, at *16 (E.D.N.C. Sept. 11, 2014) ("[S]ince the opinion is in the form of a questionnaire, the ALJ was entitled to assign it less weight than a fully explanatory and narrative opinion because such form opinions do not offer adequate explanation of their findings."). Finally, as the ALJ found that Dr.

---

[6] As noted by the magistrate judge, for applications filed on or after March 27, 2017, a new regulatory framework applies for considering the value of medical opinions. (ECF No. 25 at 17 n.2). These new regulations do not apply to Mullinax's claim for benefits.

7

Robirds' examination findings did not justify the functional impairments set forth on the checkbox form, the ALJ further concluded that such limitations were based primarily on Mullinax's subjective complaints. Significantly, courts have held that an ALJ may properly assign lesser weight to a treating physician's opinion where the opinion is based largely on the plaintiff's self-reported symptoms. *See Mastro*, 270 F.3d at 178 (concluding record adequately supported ALJ's decision to assign less than controlling weight to treating physician's opinion where "diagnosis was based largely upon the claimant's self-reported symptoms").

As stated by the magistrate judge, "the issue is not whether there was substantial evidence to support a contrary finding, but whether substantial evidence supports the ALJ's findings." (ECF No. 25 at 20); *see Craig*, 76 F.3d at 589 (when conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner]" rather than the reviewing court); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the ALJ's decision is supported by substantial evidence, the court must affirm even if it would have reached a contrary result as finder of fact). Accordingly, for the reasons set forth above, the court overrules this objection to the Report and concludes that the ALJ's evaluation of Dr. Robirds' opinion was supported by substantial evidence.

### B. Evaluation of Mullinax's Subjective Symptoms

Mullinax next objects to the magistrate judge's conclusion that the ALJ properly considered Mullinax's subjective complaints. (ECF No. 27 at 4-7). "[T]he determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig*, 76 F.3d at 594. The threshold requirement is that there be "a showing by objective [medical] evidence of the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." *Id*. (internal quotation marks omitted). Once

the ALJ concludes that this threshold requirement has been met, the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." *Id*. at 595 (citing 20 C.F.R. §§ 416.929(c)(1) & 404.1529(c)(1)). Moreover, once a claimant meets the "threshold obligation of showing by objective medical evidence a condition reasonably likely to cause the pain claimed, [a claimant is] entitled to rely exclusively on subjective evidence to prove the second part of the test, *i.e.*, that [the] pain is so continuous and/or so severe that it prevents [claimant] from working a full eight hour day." *Hines v. Barnhart*, 453 F.3d 559, 565 (4th Cir. 2006) (footnote omitted). That does not mean, however, "that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work." *Craig*, 76 F.3d at 595. "Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers." *Id*.

Mullinax objects to the magistrate judge's conclusion that the ALJ properly concluded that although her medically determinable impairments could reasonably be expected to cause the symptoms she alleges, her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (ECF No. 10-2 at 18-19). Specifically, Mullinax argues that the ALJ improperly evaluated her subjective complaints because he failed to discuss

9

her inability to dress herself, care for her hair, cook, grocery shop, or go to church, and failed to acknowledge the information she supplied for a function report. (ECF No. 27 at 4).[7]

As an initial matter, Mullinax previously presented at least some portion of this argument to the magistrate judge. (ECF No. 20 at 28). To the extent that Mullinax is merely repeating the arguments offered to the magistrate judge, the court finds no error in the Report and overrules the objections. *See Aldrich*, 327 F. Supp. 2d at 747 (explaining that "simply summarize[ing] what has been presented before" does not constitute a proper objection to the Report); *Orpiano*, 687 F.2d and 47 (de novo review is not required to the extent there are no objections to the Report).

Furthermore, the court agrees with the recommendations of the magistrate judge. As detailed by the magistrate judge, the ALJ expressly considered Mullinax's "daily activities, symptoms, treatment, medications and their side effects, and other measures she used to relieve her pain and other symptoms." (ECF No. 25 at 24). The ALJ noted, on the one hand, evidence that Mullinax spent a lot of time in bed and that her husband cooked, cared for their child, and paid bills. (ECF No. 10-2 at 19). And, the ALJ recognized Mullinax's claims that she "needed assistance for personal care, could not stand for long, needed help getting up, and that family and friends helped do housework and yard work." *Id*. On the other hand, the ALJ noted evidence that "the claimant rides in a car, drives, shopped in stores for groceries, and handled finances." *Id*. Likewise, the ALJ stated that while Mullinax experienced "anxiety and panic attacks, especially in crowds," she nonetheless "managed to go to church with her family." *Id*. at 22. The ALJ also

---

[7] Mullinax also contends that the ALJ failed to take into account that her husband completed the function report for her. (ECF No. 27 at 4). The magistrate judge points out, however, that the record also contains a function report that Mullinax herself subsequently completed. (ECF No. 25 at 25).

considered her "treatment, medications, and their side effects" in evaluating Mullinax's subjective claims regarding her symptoms and impairments. *Id*. at 19-23.

Having reviewed the record and the parties' arguments, the court agrees with the magistrate judge's conclusion that "the ALJ performed a detailed analysis of the plaintiff's subjective complaints and explained why he found that her complaints were inconsistent with and unsupported by the record evidence," and that substantial evidence supports the ALJ's analysis. (ECF No. 25 at 25). Accordingly, the court overrules this objection.

### IV. Conclusion

Having conducted a thorough review of the entire record, the court concurs with both the reasoning and the result reached by the magistrate judge in his Report and finds the ALJ's decision is supported by substantial evidence. Therefore, the court adopts the Report (ECF No. 25) and incorporates it herein by reference. The court **AFFIRMS** the decision of the Commissioner.

**IT IS SO ORDERED.**

                                                s/Timothy M. Cain
                                                United States District Judge

September 20, 2019
Anderson, South Carolina